# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. JORDAN MANSFIELD LOOPER

**Appeal from the Criminal Court for Davidson County**
**No. 2011-D-3737      J. Randall Wyatt, Jr., Judge**

---

**No. M2012-02523-CCA-R3-CD - Filed August 26, 2013**

---

Appellant, Jordan Mansfield Looper, pleaded guilty to attempted second degree murder, with the length and manner of service of his sentence to be determined by the trial court. The trial court sentenced him to serve twelve years in confinement. On appeal, appellant argues that the trial court erred in its sentencing by using an inapplicable enhancement factor and denying an alternative sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Sunny M. Eaton (on appeal); and Michael Colavecchio (at trial), Nashville, Tennessee, for the appellant, Jordan Mansfield Looper.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Christopher Buford, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

On December 13, 2011, the Davidson County Grand Jury indicted appellant for the attempted first degree murder of Whitney Wiser, his ex-girlfriend. Pursuant to a plea agreement, he pleaded guilty to attempted second degree murder on September 10, 2012, with the length and manner of his sentence to be determined by the trial court after a

sentencing hearing. At the guilty plea acceptance hearing, the State presented the following factual foundation for the plea:

[O]n September 13, 2011[,] at approximately 12:59 . . . in the afternoon, Officer Boone with the Nashville Metropolitan Police Department responded to 1 Dell Parkway in reference to a hit and run involving injury.

Upon the officer's arriving[,] Ms. Whitney Wiser was being prepared for transport and advised medical personnel there that [appellant] was the person who ran over her with his black SUV. There was also a witness at the scene, Mr. Edward Wilson[,] who also saw the black SUV speed out of the parking [a]isle and intentionally run the victim over. Mr. Wilson gave a description [that] was later aired out over the airways for [appellant] and the vehicle.

Ms. Wiser was transported to Vanderbilt Hospital. She had some serious injuries and was listed in critical condition with numerous scrapes and abrasions from the car and the asphalt[,] and she had . . . broken bones in her spine and some broken ribs.

[Appellant] was later stopped in Wilson county by a Tennessee Highway Patrolman, Trooper Tracy Wright[,] and . . . [appellant] later admitted that he was driving the vehicle that ran over Ms. Wiser in a statement to Detective Laura Thomas and Detective Mike Bennett of the Nashville Police Department . . . .

The trial court held a sentencing hearing on October 25, 2012. The victim, Whitney Wiser, testified that on September 13, 2011, she and appellant had been communicating by email throughout the morning. She said that "[h]e wanted to meet up to talk about getting back together because [they] were already broken up." She told him that she did not think that was a good idea. He called her while she was on her lunch break and informed her that he would be waiting in the parking lot at her work. When she returned to work, she saw him in the parking lot, so she got into his vehicle. They talked for approximately five minutes, and she told him that they were "not getting back together." She exited the truck and began walking away. Ms. Wiser testified that appellant backed out of his parking space and then accelerated. She said that she could hear the vehicle's engine revving. Appellant hit her with his vehicle, knocked her down, and ran over her. He "sped out of the parking lot and left." Ms. Wiser said that she recalled most of what happened except for being underneath the vehicle. She knew, however, that the front grill of the vehicle hit her head, that she slid under the vehicle, and that the vehicle's rear tire ran over her back. Ms. Wiser testified that

she was in "extreme pain." She was transported to Vanderbilt, where she had back surgery. She was released from the hospital after six days, but she was not able to walk on her own at that point. Her parents took care of her while she underwent physical therapy. She was able to walk again approximately two weeks after her surgery, and she returned to work after two months. Ms. Wiser testified that she has back pain every day and has scarring from the road burn and surgery.

On cross-examination, Ms. Wiser testified that during the conversation in his vehicle, appellant mentioned the health of his brother and appeared upset.

Detective Laura Thomas of the Metropolitan Nashville Police Department testified that she went to the scene of the incident and observed tire tread marks, an earring on the pavement, and blood. She said that there were "drag marks" that the police technicians measured to be 100 feet long, meaning that the victim was dragged for 100 feet. Detective Thomas testified that appellant told her he had consumed Xanax and one beer before the incident. She further testified that appellant's vehicle had a hole in the front grill and minor damage to the front of the hood. Detective Thomas said that appellant told her the incident was an accident.

Joseph Looper, appellant's father, testified that appellant would live with him or in another house on his property upon his release. Mr. Looper brought letters from Matthew Brown, who operates a jail ministry in Overton County, and Judge John Officer. Matthew Brown wrote that he and his ministry would support appellant. Judge Officer wrote that he knew appellant's family and that his family would support him.

Cindy Moody, appellant's mother, testified that their family learned about the cancer diagnosis of appellant's brother a few weeks before the incident. She said that appellant was upset by the news. Mrs. Moody testified that she talked to appellant by telephone on the day of the incident, and they discussed his brother, who was undergoing chemotherapy.

On cross-examination, Mrs. Moody testified that after the incident, appellant called her and said either that he had hurt Ms. Wiser or that he thought he had killed her. She instructed him to get on Interstate 40 so that she could meet him somewhere. They eventually met outside of Davidson County.

Appellant testified that he and Ms. Wiser had broken up on September 4, 2011. According to him, throughout the morning of September 13, 2011, he had been communicating with Ms. Wiser about his brother. Appellant said that they had remained friends after they broke up and that she had told him that "she was there for [him]." He said that the week before September 13, 2011, he had been upset about his brother and had been

drinking every night. On September 13, he said that he took two Xanax pills before work and five pills at work. He said that he left work because he was so upset about his brother that he had broken down. Appellant said that he stopped to pick up beer because he "wanted to just go home and . . . pass out." Instead, he called Ms. Wiser because he wanted to meet her "for comfort." Appellant said that she agreed to meet him at her work after she returned from lunch. Appellant said that when she arrived, Ms. Wiser got into his vehicle. He said that he talked to her about the possibility of his losing his job, the health of his brother, and the end of their relationship. Appellant testified that he became very emotional. He did not try to stop Ms. Wiser when she left. He said that he was crying when he backed out of his parking place and began speeding away. He said that he did not see her until the moment he hit her. Appellant testified that he knew he had run over her and that he panicked. He said that he never had any intention of hurting anyone. Appellant said that he was pulled over by a state trooper as he was meeting his mother, whom he had called as he left the parking lot. Appellant said that he knew he was responsible and that he was sorry for what happened.

On cross-examination, appellant said that he could not remember exactly what was said in the emails exchanged between him and Ms. Wiser the morning of the incident. He agreed that he and Ms. Wiser had gone to Cleveland together at the beginning of September for a national competition,[1] and while there, he became angry with Ms. Wiser to the point he destroyed property. He flew home the next day, and they broke off their relationship two days after she returned from Cleveland.

The trial court found that confinement was appropriate to avoid depreciating the seriousness of the offense and to act as a deterrent.[2] The court found that four enhancement factors applied: (1) the defendant treated the victim with exceptional cruelty; (2) the injuries inflicted upon the victim were particularly great; (3) the defendant possessed a deadly weapon (his vehicle) during the commission of the offense; and (4) the defendant had no hesitation about committing a crime when the risk to human life was high.[3] The court also considered appellant's family support as a mitigator. The trial court acknowledged the concern appellant had for his brother's health but determined that unusual circumstances did not exist, contrary to appellant's argument. The trial court sentenced appellant to twelve years to be served in the Tennessee Department of Correction.

---

[1] We gather from the record that appellant was referring to a national fitness competition in Cleveland, Ohio.

[2] Tenn. Code Ann. § 40-35-103(1)(B).

[3] Tenn. Code Ann. § 40-35-114(5), (6), (9), (10).

## II. Analysis

On appeal, appellant contends that the trial court misapplied enhancement factors when setting the length of his sentence. Appellant also argues that the trial court erred by denying an alternative sentence. The State responds that the trial court properly imposed a sentence consistent with the purposes and principles of the Sentencing Act. We agree with the State.

### 1. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -210(b) (2010); Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010 & Supp. 2012).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012); Tenn. Code Ann. § 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *Carter*, 254 S.W.3d at 345. The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

## 2. Application of Enhancement Factors

Appellant challenges the trial court's application of enhancement factor five, that the defendant allowed the victim to be treated with exceptional cruelty during the commission of the offense. He contends that the misapplication of the enhancement factor resulted in an excessive sentence.

Proper application of this factor requires a court to find cruelty that is over and above what is required to sustain a conviction for the offense. *State v. Arnett*, 49 S.W.3d 250, 258 (Tenn. 2001). Appellant left Ms. Wiser lying in the middle of a parking lot, not knowing whether she was alive or if anyone was coming to assist her, after hitting her with his vehicle and dragging her 100 feet. We conclude that this rises to the level of exceptional cruelty. Even if it does not, the trial court's misapplication of an enhancing or mitigating factor in a sentencing decision will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709.[4]

---

[4] Appellant does not challenge the application of the remaining enhancement factors. However, we note that the trial court misapplied enhancement factor 10 - the defendant had no hesitation about committing a crime when the risk to human life was high - because there is no evidence that any other person was at risk. *See State v. Dean*, 76 S.W.3d 352, 381 (Tenn. Crim. App. 2001). Nonetheless, under *Bise*, our conclusion is unaffected by this misapplication. *Bise*, 380 S.W.3d at 709-10.

In this case, the facts show that appellant ran over his former girlfriend with his large SUV after an argument. He struck her with so much force that her head created a hole in the front grill of his vehicle. She was dragged underneath the vehicle, and the back tire ran over her body. Appellant left her lying in the parking lot and drove away with no attempt to summon assistance for her. The victim had numerous broken ribs, road burn, lacerations, and a spinal injury that required surgery, hospitalization, and physical therapy. Her spinal surgery left her with steel rods in her back and extensive scarring. Appellant, as a Range I offender convicted of a Class B felony, was subject to a sentence of eight to twelve years. *See* Tenn. Code Ann. § 40-35-112(a)(2). The trial court sentenced appellant to the within-range sentence of twelve years. Based on these facts, we conclude that the trial court's sentencing decision is "within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Therefore, we affirm the trial court's sentencing decision.

### 3. Alternative Sentencing

Appellant argues that the trial court erred when it denied alternative sentencing because, he contends, "none of the statutory factors are present [that] would overcome the presumption for an alternative sentence." In particular, he argues that the circumstances of the offense were not "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *See State v. Bingham*, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995).

A court no longer presumes that a defendant is a favorable candidate for alternative sentencing under the revised Tennessee sentencing statutes. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2010). In this case, appellant pleaded guilty to a Class B felony. As such, he was not to be considered a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). Moreover, as he received a sentence of twelve years, he was not eligible for probation. *Id.* § 40-35-303(a). Accordingly, the trial court's denial of alternative sentencing was appropriate. Therefore, appellant is not entitled to relief as to this issue.

## CONCLUSION

Following our review of the parties' briefs, the record, and applicable law, we find no error and affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE